IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| ROLANDO PEREZ ARGUELLO, | ) | |
| | ) | Case No.  CV-06-485-E-BLW |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM DECISION** |
| v. | ) | **AND ORDER** |
| | ) | |
| O. LARRY LEE and CAROLYN | ) | |
| LEE, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## INTRODUCTION

The Court has before it Defendants' First Motion in Limine (Docket No. 28), Plaintiffs' Motion for Partial Summary Judgment (Docket No 30), Plaintiffs' Motion to Amend Complaint to Add a Prayer for Punitive Damages (Docket No. 40), Defendants' Motion to Strike (Docket No. 41), Defendants' Motion to Permit Amendment of Admission (Docket No. 46), and Plaintiffs' Motion to Strike (Docket No. 77).  The Court heard oral argument on the motions on April 23, 2008 and now issues the following decision.

## BACKGROUND

On December 4, 2004, Gabriel Gomez was killed and Rolando Perez was injured when their vehicle struck a cow owned by Larry and Carolyn Lee on

**Memorandum Decision and Order - 1**

Highway 33 in Jefferson County, Idaho.  Plaintiffs contend that the Lees were

negligent because they were required to fence in their cattle.  Plaintiffs seek partial

summary judgment finding the Lees negligent.

## ANALYSIS

### I.    Summary Judgment Standard of Review

One of the principal purposes of the summary judgment "is to isolate and

dispose of factually unsupported claims . . . ."  *Celotex Corp. v. Catrett*, 477 U.S.

317, 323-24 (1986).  It is "not a disfavored procedural shortcut," but is instead the

"principal tool[ ] by which factually insufficient claims or defenses [can] be

isolated and prevented from going to trial with the attendant unwarranted

consumption of public and private resources."  *Id.* at 327.  "[T]he mere existence of

some alleged factual dispute between the parties will not defeat an otherwise

properly supported motion for summary judgment; the requirement is that there be

no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving

party, *id.* at 255, and the Court must not make credibility findings.  *Id.*  Direct

testimony of the non-movant must be believed, however implausible.  *Leslie v.

Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999).  On the other hand, the Court is

**Memorandum Decision and Order - 2**

not required to adopt unreasonable inferences from circumstantial evidence.

*McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Id.* at 256-57. The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324.

## II.    Motion to Permit Amendment of Admission

The Court will first address the motion to permit amendment of admission because it affects the analysis of the motion for partial summary judgment. The Lees want to amend their admission essentially admitting that the subject area is a herd district. Any matter admitted under Rule 36 is conclusively established unless the court on motion permits withdrawal or amendment of the admission. Fed. R.

**Memorandum Decision and Order - 3**

Civ. P. 36(b). The rule provides the following two-part test under which a district court has discretion to permit withdrawal or amendment of an admission: (1) presentation of the merits of the action must be subserved, and (2) the party who obtained the admission must not be prejudiced by the withdrawal. *Sonoda v. Cabrera*, 255 F.3d 1035, 1039 (9th Cir. 2001). The test is an equitable one, balancing the right to a full trial on the merits with the parties' justified reliance on pre-trial procedures and the finality of issues deemed no longer in dispute. *Tower Partners, L.L.C. v. Beaver Creek Co.*, 1996 WL 578517 * 2 (E.D.N.C.). The discretion should not be exercised in terms of the admitting parties' excuses, but in terms of the effect upon the litigation and prejudice to the resisting party. *Mid Valley Bank v. North Valley Bank*, 764 F.Supp. 1377, 1391 (E.D.Cal. 1991).

The first prong of the test essentially asks whether allowing withdrawal or amendment of an admission will aid in the resolution of the case on the merits. *Gallegos v. City of Los Angeles*, 308 F.3d 987, 993 (9th Cir. 2002). Courts have held that "the first half of the test in Rule 36(b) is satisfied when up-holding the admissions would practically eliminate any presentation of the merits of the case." *Hadley v. U.S.*, 45 F.3d 1345, 1348 (9th Cir. 1995); *see also Ropfogel v. U.S.*, 138 F.R.D. 579, 583 (D.Kan. 1991). Here, allowing the Lees to amend their admission would aid in the resolution of this case on the merits. As more fully

**Memorandum Decision and Order - 4**

discussed below, whether the subject area is part of a herd district or open range materially affects the Lees' liability in this case.

As for the second prong of the test, the "prejudice contemplated by Rule 36(b) is not simply that the party who obtained the admission will now have to convince the factfinder of its truth.  Rather, it relates to the difficulty a party may face in proving its case, e.g., caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to the questions previously deemed admitted." *United States v. Conlon*, 474 F.3d 616, 622 (9th Cir. 2007) (internal citation and quotation omitted).  Moreover, "[w]hen undertaking a prejudice inquiry under Rule 36(b), district courts should focus on the prejudice that the nonmoving party would suffer at trial." *Id*. at 623.  "[R]eliance on a deemed admission in preparing a summary judgment motion does not constitute prejudice.' *Id*. at 624.  The burden is on the party who obtained the admission to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits. *Id*. at 621.

Here, the Court finds that Plaintiffs have not met their burden.  Although Plaintiffs may have foregone some discovery based on the admission, the Ninth Circuit has stated that a district court may reopen the discovery period to accommodate such a scenario. *Id*. at 624.  Moreover, this Court has not yet set a

**Memorandum Decision and Order - 5**

trial date, and the Court will give Plaintiffs additional time to conduct discovery related to whether the subject area is a herd district or open range.  Therefore, the Court will grant the motion to amend the admission, and the Court will not consider the Lees' admission that the subject area was a herd district in analyzing Plaintiffs' summary judgment motion.

However, because Plaintiffs heavily relied on the Lees' admission in preparing their summary judgment motion, the Court will award Plaintiffs their costs and fees associated with the summary judgment motion, as well as their costs and fees associated with the Lees' motion to amend admissions.

## III.    Motion for Partial Summary Judgment

In Idaho, livestock areas outside of cities and villages fall into two categories – open range and herd districts.  *Adamson v. Blanchard*, 990 P.2d 1213, 1217 (Idaho 1999); *see also* Moreland v. Adams, 152 P.3d 558, 561 (Idaho 2007). Open range includes all areas of the state not within cities, villages, or already created herd districts. Animals may roam freely in open range areas without risk of owner liability. *Id.*  "In herd districts, however, animals may not roam freely and owners incur a duty to keep livestock fenced." *Id.*

Summarizing Idaho law as it relates to owners of animals that cause accidents on roads in either an open range or a herd district, the Idaho Supreme

**Memorandum Decision and Order - 6**

Court has stated as follows:

> (1) the owners of domestic animals are not liable or negligent when the animals cause a highway collision in "open range" or when the animals are "lawfully on any highway," I.C. §§ 25-2118, -2119; (2) if the "open range" or "lawful" conditions are not present, then the doctrine of *res ipsa loquitur* supplies an inference that the animal owner was negligent; (3) the inference can be supplemented by other evidence of the owner's negligence; (4) the inference can be rebutted by a satisfactory explanation or showing by the animal owner of proper care, enclosures, and any other evidence tending to negate the inference of the owner's negligence; (5) when properly placed at issue by the parties, the issues of lawful presence, inference of negligence, and rebuttal of the inference, are questions for the trier of facts; and (6), in any event, the vehicle owner may be liable for contributory negligence under various theories.

*Griffith v. Schmidt*, 715 P.2d 905, 909 (Idaho 1985).  Although the term "lawfully" is not defined in the statute, the Idaho Supreme Court has determined that "its definition is not at issue in cases of nighttime vehicle collisions with unattended domestic animals running at large wherein we can presume the animals' presence on the highway does not fall within any reasonable definition of 'lawfully.'" *Id.*; *see also Adamson v. Blanchard*, 990 P.2d 1213, 1216 n.2 (Idaho 1999).

In this case, Plaintiffs contend that the accident occurred in a herd district. The Lees contend that the subject area is open range, or that there is at least a genuine issue of fact as to whether it is open range or a herd district.  Idaho Code

**Memorandum Decision and Order - 7**

§ 25-2401 *et seq.* provides the current mechanism for creating a herd district.

*Adamson*, 990 P.2d at 1217.  As relevant here, § 25-2401(1) provides as follows:

> (1) The board of county commissioners of each county in the state shall have power to create, modify or eliminate herd districts within such county as hereinafter provided; and when such district is so created, modified or eliminated, the provisions of this chapter shall apply and be enforceable therein. On and after January 1, 1990, no county shall regulate or otherwise control the running at large of horses, mules, asses, cattle, sheep or goats within the unincorporated areas of the county unless such regulation or control is provided by the creation of a herd district pursuant to the provisions of this chapter, except as provided by subsection (2) of this section. The provisions of this chapter shall not apply to any herd district or herd ordinance in full force and effect prior to January 1, 1990, but shall apply to any modification thereof.
>
> (2) A panel of five (5) members may be created in a county, the members of which shall be appointed as follows: two (2) members by appointment of the board of county commissioners; two (2) members by appointment of a local, county or state livestock association or associations; and the fifth member, by concurrent appointment of the first four (4) appointees. Only if a majority of said panel, after a public hearing held with notice as prescribed by law, concludes that the creation, modification or elimination of a herd district is insufficient to control or otherwise regulate the movement of livestock in an area, the board of county commissioners shall have power to establish such control by ordinance, provided that the cost of construction and maintenance of any fencing or cattle guards required by said ordinance shall be paid by the county current expense fund.

**Memorandum Decision and Order - 8**

I.C. § 25-2401(1).  Whenever any herd district has been created utilizing the mechanism described in the statute, a legal prima facie presumption exists after a lapse of two years from the date of such order, that all proceedings and jurisdictional steps preceding the making of such order have been properly and regularly taken so as to warrant the board in making the order.  I.C. § 31-857.  At that point, the burden of proof falls upon the party disputing the validity of the order to show that any of the proceedings or jurisdictional steps were not properly or regularly taken.  Id.  Such prima facie presumption is the rule of evidence in all courts in the state of Idaho.  Id.

Here, Plaintiffs have not produced direct evidence that the board of county commissioners for Jefferson County issued an order creating a herd district.  The Lees argue that the only evidence that a herd district exists is a map, relied upon by Jefferson County officials, which depicts the area in question as part of a herd district.  (Olsen Aff., ¶¶ 4, 6; Coletti Aff., Ex. A; Boulter Depo., p. 6).  Moreover, Jefferson County Sheriff Olsen, whose office is responsible for enforcing herd district laws in the County, is not aware of any other documents creating a herd district. (Olsen Aff., ¶ 8).  The County Clerk, Christine Boulter, likewise does not know of the existence of any documents creating the herd district. (Boulter Depo., p. 6).  And Rod House, archivist with the Idaho State Historical Society, was

**Memorandum Decision and Order - 9**

unable to find any records pertaining to the creation or existence of herd districts in

Jefferson County. (House Aff., 3-4).

Under these circumstances, there is no presumption that a herd district was

created.  Thus, at this point, the Court cannot conclude that the subject area is a

herd district.  However, the Court likewise cannot conclude that the subject area is

open range.  "'Open range' is defined by I.C. § 25-2402 as all areas of the state not

within cities, villages, or herd districts." Moreland, 152 P.3d at 561 (citing

Adamson, 990 P.2d at 1217; I.C. § 25-2402).[1]  The Idaho Supreme Court has stated

that it is clear there is no third "hybrid" category for land outside of cities and

villages.  *Moreland*, 152 P.3d at 561.  Because questions of fact remain as to

whether the subject area is a herd district, those same questions remain as to

whether the area is open range, as it must be either one or the other.

As discussed above, a cattle owner's liability is materially affected by

whether the area is open range or a herd district.  In open range, there is absolute

immunity, but in herd districts there is immunity only if cattle are legally on the

_____

[1] The Court recognizes that I.C. § 25-2118 appears to define open range differently from I.C. § 25-2402 by requiring that open range land be unenclosed land where cattle by custom, license, lease, or permit, are grazed or permitted to roam.  Using such a definition may make a difference in this case because the subject area was not unenclosed.  However, in *Moreland*, the Idaho Supreme Court recently explained why I.C. § 25-2402 contains the more accurate definition of open range.  The Idaho Supreme Court essentially concluded that I.C. § 25-2402 squares with the companion herd district statutes and historical meaning of open range under Idaho law.  Accordingly, this Court will use the I.C. § 25-2402 definition of open range.

**Memorandum Decision and Order - 10**

road.  *Moreland*, 152 P.3d at 561.  Because the Court cannot determine whether the land is open range or a herd district, the Court cannot grant summary judgment.

The Court recognizes that, based on discussions at oral argument regarding a fire at the county clerk's office, any order of the board of county commissions creating a herd district which may have existed at some point has likely been destroyed.  Thus, in all likelihood, the question will be submitted to a jury to make that decision based on other evidence, such as the testimony of clerks, ranchers, officers, etc.[2]  However, as noted above, the Court will give Plaintiffs an opportunity to do additional discovery limited to determining whether the subject area is open range or a herd district.  Plaintiffs may then file another motion for summary judgment if they so desire.[3]  Accordingly, Plaintiffs' pending motion for partial summary judgment will be denied.

----

[2] Pursuant to F.R.E. 1004(1), the original is not required, and other evidence of the contents of a writing is admissible if the original was lost or destroyed.

[3] At the end of oral argument, Plaintiffs' counsel also made an argument that based on I.C. § 25-2119, an owner of cattle is per se liable if his cattle is unlawfully on a road and causes an accident.  Section 25-2119 does not say that.  It states that "[n]o person owning, or controlling the possession of, any domestic animal lawfully on any highway, shall be deemed guilty of negligent by reason thereof."  I.C. § 25-2119.  Suggesting that an owner is per se liable if the animal is unlawfully on the highway because an owner is not liable if the animal is lawfully on a highway is fallacious reasoning not in line with Idaho case law in this matter.  As discussed in detail above, if lawful conditions are not present, then the doctrine of *res ipsa loquitur* supplies an inference that the animal owner was negligent, but that inference can be rebutted, and when properly placed at issue by the parties, the issues of lawful presence, inference of negligence, and rebuttal of the inference are questions for the trier of facts.  *Griffith v. Schmidt*, 715 P.2d at 909.

**Memorandum Decision and Order - 11**

## IV.    Motion in Limine

The Lees seek an in limine ruling precluding Plaintiffs from introducing evidence of past incidents of cattle roaming off the Lees' property.  Each of the alleged incidents occurred on either the Lees' Jefferson County property or their Clark County property.

With respect to the Clark County property, the Lees assert that the property is open range.  Plaintiffs do not dispute this.  As explained above, animals may roam freely in open range areas without risk of owner liability.  *Adamson*, 990 P.2d at 1217.  Thus, whether the Lees' cattle roamed freely in Clark County is irrelevant in this case.  F.R.E. 402.  Accordingly, the Court will preclude Plaintiffs from introducing evidence related to the Lees' Clark County animals roaming off their land.

With respect to the Jefferson County incidents, Plaintiffs contend that the Jefferson County Sheriff's Office investigated six incidents, plus the incident at issue in this case, where the Lees' animals were found trespassing on a neighbor's land or wandering the roads.  Plaintiffs contend that evidence of these investigations is admissible as habit evidence under F.R.E. 406.  The rule states that "[e]vidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of

**Memorandum Decision and Order - 12**

eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice." F.R.E. 406. In this case, there is no question that the cow at issue in this case was the Lees' cow. Thus, there is no reason to introduce the habit of the Lees with respect to their other animals.

However, the evidence may nevertheless be admissible as Rule 404(b) evidence that the Lees failed to properly maintain their fences and that cows escaped. At trial, if Plaintiffs can make a sufficient showing that the animals escaped through improperly maintained fences, that the cows belonged to the Lees, and that the incidents are temporally and spatially similar to the incident at issue in this case, the Court may allow the evidence.[4] All of this becomes moot, of course, if it is determined that the subject area is open range.

## V.    Motion to Amend Complaint to Add Punitive Damages

An award of punitive damages requires a bad act and a bad state of mind. The defendant must (1) act in a manner that was an extreme deviation from reasonable standards of conduct with an understanding of – or disregard for – its likely consequences, and must (2) act with an extremely harmful state of mind,

---

[4] Regardless of whether Plaintiffs can make a sufficient showing at trial, the Court will grant the motion in limine as to the incidents involving sheep because of the differences in herding and fencing in sheep versus cattle.

**Memorandum Decision and Order - 13**

described variously as with malice, oppression, fraud, gross negligence, wantonness, deliberately, or willfully.  *Meyers v. Workmen's Auto Ins. Co.*, 95 P.3d 977, 983 (Idaho 2004).

At trial, Plaintiffs must satisfy this standard by clear and convincing evidence.  Idaho Code § 6-1604(1).  For purposes of Plaintiffs' motion to amend, however, they do not need to meet this high burden – they need show only "a reasonable likelihood of proving facts at trial sufficient to support an award of punitive damages."  Idaho Code § 6-1604(2).

To meet their burden, Plaintiffs offer, among other evidence, the affidavit of Edward Duren.  Mr. Duren is a Professor Emeritus of Animal Science at the University of Idaho.  (Duren Aff.).  Mr. Duren is certified by the American Registry of Professional Animal Scientists.  (Duren Aff.).  As an Extension livestock specialist, Mr. Duren has been responsible for "production and management of beef, sheep and horses."  (Duren Aff. Ex. A).  He has also "conducted over ninety field trials and demonstrations on neo-natal beef calf stress and disease prevention, supplemental feeding and external and internal parasite control in cattle. . . ."  (Duren Aff., Ex. A).

Duren's qualifications render him qualified as an expert under Rule 702 to testify about certain cattle behavior.  For example, Duren opines that the Lees'

conduct manifest a willful disregard for their livestock and the damage the livestock could cause to others.   They have no written farm plan or operational manual for their ranch,  no regular schedule for feeding livestock, and no goals relative to the production of their cow herd in terms of reducing the number of open cows or increasing calf production.  (Duren Aff., Ex. B).  He notes that the Lees have not attended any beef schools or classes on production practices or ranch management, do not provide any safety training for ranch hands on property maintenance or the proper handling of cattle to reduce their stress, and do not have an employee manual or conduct performance reviews of hired help in handling cattle or operating equipment .  (Duren Aff., Ex. B).  Finally, Duren indicates that the Lees do not provide adequate nutrition for their cattle, and he indicates that the Lees have a high cull rate of open cows for their herd, indicating both a poor level of nutrition for the cows and poor calving and breeding practices.  (Duren Aff., Ex. B).

Duren concludes that the Lees' poor level of nutrition and care of their cattle is an extreme departure from good ranching practices.  He suggests that such practice fails to keep the cattle content and contained in their assigned fields. (Duren Aff., Ex. B).  Duren therefore states that the Lees' cows are prone to seek feed and water outside the Lees' property by pushing on or testing the fences and

**Memorandum Decision and Order - 15**

gates in the field where they are being kept.  (Duren Aff., Ex. B).  He further states that inadequately fed cattle that are kept in a field next to a road, such as the Lees' cattle, are particularly prone to stretch or test the fences to get to the vegetation growing alongside the road.

Duren's opinion fulfills the first element of the *Meyers* test – that the defendant acted in a manner that was an extreme deviation from reasonable standards of conduct with an understanding of – or disregard for – its likely consequences.  Ultimately, Duren opines that the Lees' cared for their cattle in a manner which made them prone to escape through the Lees' fence, and that the Lees' have "demonstrated habitually substandard care" to their cow herd, they were "willful and reckless" in the conduct and management of their ranching operation, and they demonstrated a practice of "gross negligence" in the care and operation of their ranch.  (Duren Aff., Ex. B).  While Duren does not use the phrase "extreme deviation," he does use phrases such as "habitually substandard," "willful and reckless," and "gross negligence."   Taken together, they mean the same thing.   At this point, Duren's opinion, coupled with the various accounts from law enforcement officials suggesting that the Lees' fences were poorly maintained, establishes that Plaintiffs are "reasonably likely" to prove that the Lees' conduct was an extreme deviation from industry standards.

**Memorandum Decision and Order - 16**

The second element – the bad state of mind element – requires a showing that the Lees' acted with malice or gross negligence, among other states of mind. Because there is rarely direct evidence of someone's state of mind, this element is often established by inferences from other evidence. That "other evidence" here is the evidence just discussed – that the Lees' conduct was an extreme deviation from industry standards. If the Lees were deviating from standards to an extreme degree, they may have been acting with gross negligence, a state of mind sufficient to satisfy the second element. At least, it is "reasonably likely" – the lenient standard governing these proceedings – that jurors could reach that conclusion.[5] Although this is a close call, at this point the Court finds that there is enough evidence to allow the amendment. At trial, the Court will consider the evidence very carefully to determine if the punitive damages issue should be submitted to the jury.[6]

## VI.   The Lees' Motion to Strike

The Lees ask the Court to strike the affidavits of Edward Duren and Scott Dorval, two of Plaintiffs' expert witnesses. The Lees contend that the expert

---

[5]  Obviously, the standard at trial is much more strict; there, Plaintiffs must prove each element by clear and convincing evidence, as discussed above.

[6]  The Court recognizes that all of this will become moot if it is determined that the subject area is open range. Still, at this point, there is sufficient evidence to allow the amendment.

**Memorandum Decision and Order - 17**

opinions were untimely disclosed.

The Case Management Order in this case states that Plaintiffs shall disclose their experts on or before August 17, 2007, Defendants shall disclose their experts on or before September 18, 2007, and all rebuttal experts shall be identified on or before October 18, 2007. The Order further states that within the deadlines for the disclosure of expert witnesses, the parties shall provide the report described in Rule 26(a)(2)(B), as modified by Local Rule 26.2(b). The Order also indicates that supplementation to expert witness reports shall be done in accordance with Rule 26(e)(1). Finally, the Order states that pursuant to Local Rule 26.2(b), expert witnesses will not be allowed to offer any opinion not disclosed in the mandatory Rule 26 disclosures, supplementation, or deposition.

Plaintiffs disclosed Edward Duran as an expert witness on August 6, 2007, but did not provide his report until August 23, 2007, six days after the deadline. The Lees asked for, and received from Plaintiffs but not the Court, an extension of time from September 18, 2007 to October 31, 2007 to disclose their expert witnesses. Nevertheless, the Lees disclosed two of their expert reports on November 6 & 8, 2007, six to eight days beyond the extended deadline. Plaintiffs disclosed their rebuttal experts, Ed Duran and Scott Dorval, on December 14, 2007. Plaintiffs then provided their rebuttal report on February 15, 2008, long

**Memorandum Decision and Order - 18**

after the deadline.

The Lees ask this Court to strike Plaintiffs' expert testimony as untimely, while acknowledging that their own expert reports were disclosed beyond the extension given by Plaintiffs, and well beyond the Court's original deadline which had never been extended.  The Lees also suggest that notwithstanding the fact that Plaintiffs agreed to extend the Lees' expert witness deadline to October 31, 2007, Plaintiffs were still required to abide by the earlier October 18, 2007 rebuttal deadline.  The Court finds the motion a bit disingenuous, and the Court has determined that it should either strike all or none of the tardy expert opinions disclosed by both the Lees and Plaintiffs.  Ultimately, in the interest of deciding the case on the merits, and given the multiple discovery disputes which resulted in delayed discovery in this matter, the Court has determined that it will not strike any of the expert opinions.  Accordingly, the Court will deny the Lees' motion to strike.

## VII.   Plaintiffs' Motion to Strike

Plaintiffs ask the Court to strike all or portions of several affidavits filed by the Lees in opposition to Plaintiffs' Motion to Amend Complaint to Add Punitive Damages.  Given the Court's decision to grant the motion to amend, the Court finds the motion to strike moot.

**Memorandum Decision and Order - 19**

# ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Defendants' First Motion in Limine (Docket No. 28) shall be, and the same is hereby, GRANTED in part, and ruling is RESERVED until trial in part, as discussed above.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Partial Summary Judgment (Docket No. 30) shall be, and the same is hereby, DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Amend Complaint to Add a Prayer for Punitive Damages (Docket No. 40) shall be, and the same is hereby, GRANTED.

IT IS FURTHER ORDERED that Defendants' Motion to Strike (Docket No. 41) shall be, and the same is hereby, DENIED.

IT IS FURTHER ORDERED that Defendants' Motion to Permit Amendment of Admission (Docket No. 46) shall be, and the same is hereby, GRANTED.

IT IS FURTHER ORDERED that Defendants shall pay Plaintiffs' their costs and fees associated with the motion for partial summary judgment and the motion to permit amendment of admission.  The parties shall meet and confer in an attempt to determine the exact amount of such costs and fees.  If counsel are unable to agree on the amount, they shall contact Jeff Severson, the Law Clerk assigned to

this case at 334-9027, and he will informally assist the parties in determining the correct amount of costs and fees.  If the parties are still unable to agree on an amount, the parties will be given an opportunity to brief the issue.

IT IS FURTHER ORDERED that Plaintiffs shall have until June 16, 2008 to conduct additional discovery – related only to determining whether the subject area is open range or a herd district –  and to file another motion for summary judgment is they so desire.  If Plaintiffs choose not to file another summary judgment motion, Plaintiffs shall notify the Court so that the Court can set a status conference for the purpose of setting the case for trial.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Strike (Docket No. 77) shall be, and the same is hereby, DEEMED MOOT.



DATED:  **May 14, 2008**

Honorable B. Lynn Winmill
Chief U. S. District Judge