IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| ROLANDO PEREZ ARGUELLO, | ) | |
| | ) | Case No.  CV-06-485-E-BLW |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM DECISION** |
| v. | ) | **AND ORDER** |
| | ) | |
| O. LARRY LEE and CAROLYN LEE, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## INTRODUCTION

The Court has before it Plaintiffs' Motion for Reconsideration (Docket No. 81), Plaintiffs' Renewed Motion for Partial Summary Judgment (Docket No. 83), Plaintiffs' Motion to Exclude Expert Report and Testimony of Bryan Finkle (Docket No. 84), Plaintiffs' Objection to Additional Defense Expert Testimony (Docket No. 85), Plaintiffs' Motion to File Excess Pages (Docket No. 86), and Plaintiffs' Second Motion to File Excess Pages (Docket No. 104).  The Court heard oral argument on the motions on September 11, 2008 and now issues the following decision.

**Memorandum Decision and Order - 1**

## BACKGROUND

On December 4, 2004, Gabriel Gomez was killed and Rolando Perez was injured when their vehicle struck a cow owned by Larry and Carolyn Lee on Highway 33 in Jefferson County, Idaho.  Plaintiffs contend that the Lees' negligence caused the accident.

Earlier this year, Plaintiffs filed a motion for partial summary judgment, based in part on their admission in discovery that their land was in a herd district which, under Idaho law, obligated them to keep their animals fenced off from the public highways.  In response to the motion, Defendants filed a motion to permit amendment of their admission concerning the status of their land.  After hearing oral argument on the motions, the Court granted the Lees' motion seeking leave to withdraw their admission, and denied the motion for partial summary judgment.  However, because the summary judgment motion relied heavily on Defendants' previous admission,  the Court gave Plaintiffs an opportunity to do additional limited discovery and file a second motion for summary judgment.  That motion and other related matters are now before the Court.

## ANALYSIS

I.    **Summary Judgment Standard of Review**

One of the principal purposes of the summary judgment "is to isolate and

dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id.* at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The evidence must be viewed in the light most favorable to the non-moving party, *id.* at 255, and the Court must not make credibility findings. *Id.* On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir.2000).

**Memorandum Decision and Order - 3**

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor.  *Id.* at 256-57.  The non-moving party must go beyond the pleadings and show "by her affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists.  *Celotex,* 477 U.S. at 324.

## II.     Plaintiffs' Motion for Partial Summary Judgment

In its earlier opinion in this matter, the Court explained in detail Idaho law regarding livestock areas.  For ease of reference, the Court will give an overview of the law here.

In Idaho, livestock areas outside of cities and villages fall into two categories – open range and herd districts.  *Adamson v. Blanchard,* 990 P.2d 1213, 1217 (Idaho 1999); *see also Moreland v. Adams,* 152 P.3d 558, 561 (Idaho 2007). Open range includes all areas of the state not within cities, villages, or already created herd districts. Animals may roam freely in open range areas without risk of owner liability.  *Id.*  "In herd districts, however, animals may not roam freely and owners incur a duty to keep livestock fenced."  *Id.*

Summarizing Idaho law as it relates to owners of animals which cause accidents on roads in either an open range or a herd district, the Idaho Supreme Court has identified six guiding principles:

**Memorandum Decision and Order - 4**

> (1) the owners of domestic animals are not liable or negligent when the animals cause a highway collision in "open range" or when the animals are "lawfully on any highway," I.C. §§ 25-2118, -2119; (2) if the "open range" or "lawful" conditions are not present, then the doctrine of *res ipsa loquitur* supplies an inference that the animal owner was negligent; (3) the inference can be supplemented by other evidence of the owner's negligence; (4) the inference can be rebutted by a satisfactory explanation or showing by the animal owner of proper care, enclosures, and any other evidence tending to negate the inference of the owner's negligence; (5) when properly placed at issue by the parties, the issues of lawful presence, inference of negligence, and rebuttal of the inference, are questions for the trier of facts; and (6), in any event, the vehicle owner may be liable for contributory negligence under various theories.

*Griffith v. Schmidt*, 715 P.2d 905, 909 (Idaho 1985).  Although the term "lawfully" is not defined in the statute, the Idaho Supreme Court has determined that "its definition is not at issue in cases of nighttime vehicle collisions with unattended domestic animals running at large wherein we can presume the animals' presence on the highway does not fall within any reasonable definition of 'lawfully.'" *Id.*; *see also Adamson v. Blanchard*, 990 P.2d 1213, 1216 n.2 (Idaho 1999).

In this case, Plaintiffs contend that the accident occurred in the Mud Lake/Terreton herd district.  The Lees argue, however, that the herd district is invalid and therefore the land is open range.  Idaho Code § 25-2401 *et seq*. provides the current mechanism for creating a herd district.  *Adamson*, 990 P.2d at

**Memorandum Decision and Order - 5**

1217. As relevant here, § 25-2401(1) provides as follows:

> (1) The board of county commissioners of each county in the state shall have power to create, modify or eliminate herd districts within such county as hereinafter provided; and when such district is so created, modified or eliminated, the provisions of this chapter shall apply and be enforceable therein. On and after January 1, 1990, no county shall regulate or otherwise control the running at large of horses, mules, asses, cattle, sheep or goats within the unincorporated areas of the county unless such regulation or control is provided by the creation of a herd district pursuant to the provisions of this chapter, except as provided by subsection (2) of this section. The provisions of this chapter shall not apply to any herd district or herd ordinance in full force and effect prior to January 1, 1990, but shall apply to any modification thereof.
>
> (2) A panel of five (5) members may be created in a county, the members of which shall be appointed as follows: two (2) members by appointment of the board of county commissioners; two (2) members by appointment of a local, county or state livestock association or associations; and the fifth member, by concurrent appointment of the first four (4) appointees. Only if a majority of said panel, after a public hearing held with notice as prescribed by law, concludes that the creation, modification or elimination of a herd district is insufficient to control or otherwise regulate the movement of livestock in an area, the board of county commissioners shall have power to establish such control by ordinance, provided that the cost of construction and maintenance of any fencing or cattle guards required by said ordinance shall be paid by the county current expense fund.

I.C. § 25-2401(1).  Whenever a herd district has been created using the mechanism

**Memorandum Decision and Order - 6**

described in the statute, a legal prima facie presumption exists, after a lapse of two years from the date of such order, that all proceedings and jurisdictional steps preceding the making of such order have been properly and regularly taken so as to warrant the board in making the order. I.C. § 31-857. At that point, the burden of proof falls upon the party disputing the validity of the order to show that any of the proceedings or jurisdictional steps were not properly or regularly taken. Id. Such prima facie presumption is the rule of evidence in all courts in the state of Idaho. Id.

Here, Plaintiffs produced a copy of an order from the Jefferson County Commission dated March 10, 1930, creating the Mud Lake/Terreton herd district. (Boulter Aff., Ex. A). This raises the presumption that a herd district was created and that all proceedings and jurisdictional steps to create the district were properly and regularly taken. I.C. § 31-857. Therefore, the burden of proof falls upon the Lees to show that any of the proceedings or jurisdictional steps were not properly or regularly taken. Id. The Lees contend that the Mud Lake/Terreton herd district is invalid because it includes lands owned by the United States and because the County Commissioners did not comply with all steps preceding establishment of the herd district. The Court will address each contention in turn.

**Memorandum Decision and Order - 7**

**A.     Inclusion of lands owned by the United States, upon which the grazing of livestock has historically been permitted.**

In arguing that the herd district is invalid because it contains land owned by the United States, the Lees rely upon Idaho Code § 25-2402(2)(a).  The statute provides that "[n]otwithstanding any other provision of law to the contrary, no herd district shall . . . [c]ontain any lands owned by the United States of America or the state of Idaho, upon which the grazing of livestock has historically been permitted."  I.C. § 25-2402(2)(a).  Thus, the statute precludes the inclusion in a herd district of any lands (1) which are owned by the United States of America or the state of Idaho, and (2) upon which grazing of livestock has been historically permitted.

In *Miller v. Miller*, 745 P.2d 294 (Idaho 1987), the Idaho Supreme Court held that if a herd district is created which includes federal or state lands excluded by § 25-2402(2)(a), the courts cannot simply excise the federal or state lands from the herd district, but must declare the entire herd district invalid.   Relying upon this authority, the Lees contend that the Mud Lake/Terreton herd district contains federal lands and must therefore be declared invalid.  The Court is not persuaded that the Idaho Supreme Court decision in *Miller* dictates this result.

Idaho Code § 25-2402(2)(a), which excludes federal and state grazing lands from herd districts, expressly provided that it applies to herd districts "established

before or after July 1, 1983."   Thus, when the herd district at issue in *Miller* was

created in 1984, the ordinance establishing the district conflicted with the general

laws of the state and was therefore "an invalid exercise of the Bannock County

Commissioners powers . . . ."   *Id.*   at 297.  This, the *Miller* court determined,

requires that the entire ordinance be declared invalid.

    The same cannot be said of the  the creation of the Mud Lake/Terreton herd

district.  When it was created in 1930 by the Jefferson County Commissioners,

there was no prohibition on the inclusion of federal and state grazing lands in herd

districts.  Thus, the Jefferson County ordinance, unlike the Bannock County

ordinance at issue in *Miller*, was not in conflict with the general laws of the state in

existence at the time of its enactment and was therefore a valid exercise of the

Commissioners powers.  Thus, the premise of *Miller*, that an ordinance adopted in

conflict with the general laws of the state is invalid in its entirety, simply does not

apply to the ordinance at issue here.

    Having determined that *Miller* does not require a finding that the Jefferson

County ordinance establishing the Mud Lake/Terreton herd district is invalid, we

must still consider the language in I.C. § 25-2402(2)(a) requiring the exclusion of

federal and state grazing lands from all herd districts "established before or after

July 1, 1983."  The language of the statute, while clearly excluding federal and

**Memorandum Decision and Order - 9**

state grazing lands from herd districts established before July 1, 1983, does not reveal a legislative intent to invalidate all herd districts which lawfully included such lands prior to the effective date of the statute.  Had they intended such a draconian result – retroactively invalidating any herd district which contains so much as one acre of federal or state grazing lands – it seems clear the legislature would have been more explicit.  A more reasonable view of the statutory language would be to require that any federal or state grazing lands included in herd districts lawfully in effect on July 1, 1983 be excised from the district.[1]  This view, which the Court adopts, would require the exclusion of any such government-owned grazing lands from the Mud Lake/Terreton herd district, but would leave the balance of the herd district, and the ordinance creating it, in full force and effect.

Even if the Court were to adopt the Lees argument that I.C. § 25-2402(2)(a) requires that the ordinance be declared invalid if it includes federal or state grazing lands, they cannot rely upon the statute because they have presented no evidence establishing that the federal and state lands included in the herd district were historically grazed.  As clearly stated in the statute, a herd district is not invalid simply because it contained lands owned by the United States.  Those lands must be lands "upon which the grazing of livestock has historically been permitted."

---

[1]  This view would also be consistent with the strong presumption in favor of the validity of long-established herd districts expressed in I.C. § 31-857.

**Memorandum Decision and Order - 10**

I.C. § 25-2402(2)(a).  Without any evidence of permitted historical grazing, the

Lees cannot overcome their burden of disputing the validity of the herd district.[2]

**B.      Steps preceding establishment of herd district**.

The Lees next contend that the County Commissioners did not comply with

all preceding and jurisdictional steps.  Their argument is two-fold.  First, the Lees

contend that the commissioners did not comply with statutory notice requirements.

Second, the Lees contend that the herd district is not valid because the order

creating it did not specify the time at which it would take effect.

**1.      Notice Requirements**

To establish a herd district, the Idaho law in effect in 1930 required the

Board of County Commissioners to set a date for hearing a petition for a herd

district, and give notice of the hearing by posting it in three conspicuous places in

the herd district and by publishing it for two weeks prior to the hearing in a

newspaper published in the county nearest the proposed herd district.  (Coletti Aff.,

Ex. L, Docket No. 96).  The Lees contend that the County Commissioners did not

publish notice of the hearing in the newspaper.  In support of their argument, the

---

[2] During oral argument on the pending motions, the Lees requested leave to re-open discovery in this matter in order to obtain evidence of grazing.  The Court declined to re-open discovery yet again in this matter, as the parties have already had two attempts at summary judgment, and the Court is unwilling to continue down the slippery-slope of re-opening discovery after the fact.

Lees provide evidence that the notice was not published in the Rigby Star, the newspaper which ultimately published the commissioners' decision to create the herd district.

Plaintiffs counter by suggesting that there is substantial evidence that the notices were published in another Jefferson County newspaper, the Roberts Sentinel.  The public record reveals that the petition for a herd district in the Mud Lake area was presented to the Jefferson County Commission at their regular meeting on October 14, 1929.  At that same meeting, the Commission specifically ordered that notice of a hearing on the petition be issued in conformity with Idaho law.  (Barton Aff., ¶ 3, Ex. B.).   The Commission's minutes do not reflect that the Commission designated  which of the Jefferson County newspapers should contain the notice.  However, publishing the notice in the Roberts Sentinel, rather than the Rigby Star, would be consistent with the spirit of the statutory requirement that the notice be published in the county nearest the proposed herd district, since Roberts is physically much closer to Mud Lake than is Rigby.  Moreover, minutes of the commission meetings between October 14, 1929 and June 9, 1930 show an approved payment of a series of charges for printing from the Roberts Sentinel, including $15.00 on October 14, 1929, $45.65 on January 13, 1930, $11.75 on May 12, 1930, and $36.20 on June 9, 1930.  (Barton Aff., ¶¶ 3-6, Ex. B, D, E.).

**Memorandum Decision and Order - 12**

Unfortunately, copies of the Roberts Sentinel for 1929 and 1930 are no longer available from any known source.

On balance, the Court finds[3] that notice was given as required by statute. The Court is led to this conclusion by four undisputed facts: First, the Commission ordered on October 14, 1929 that notice of the public hearing be issued as required by Idaho law.  Second, Idaho law required that such notice be published in the county nearest to the proposed herd district. Third, although both communities are in Jefferson County, Roberts is closer in proximity to Mud Lake than is Rigby. Fourth, the County paid charges to the Roberts Sentinel for legal publications during the same time period when the notice would have been published.  Against this evidence, the Lees' argument that publication was not made simply because there is no record of publication in the Rigby Star does not fulfill the Lees' burden of overcoming the statutory presumption that the herd district was validly created. *See* I.C. § 31-857.

---

[3] The validity of an ordinance is a judicial question for resolution by the court.  6 McQuillin, The Law of Municipal Corporations § 20:1-2.  This would include the resolution of factual disputes relevant to the validity of the ordinance.  *See Allred v. City of Raleigh*, 178 S.E.2d 432 (N.C. 1971).  Although the issue arises in the context of the Plaintiff's motion for summary judgment, it is the Lees' burden, as the party challenging the validity of the ordinance, to establish that the procedural prerequisites to the adoption of the ordinance were not followed. They have not presented evidence from which the Court, as the finder of fact, can find that the required notice of the public hearing was not given.

**Memorandum Decision and Order - 13**

### 2.    Time of Effect Requirement

The Lees next contend that the Mud Lake/Terreton herd district is invalid because the commissioners' order did not specify the time at which it would take effect.  In 1930, when the herd district was created, Idaho law required the commission to issue an order which "shall specify a certain time at which [the herd district] shall take effect, which time shall be at least thirty days after the making of said order[.]" (Coletti Aff., Ex. L, Docket No. 96).  It is undisputed that the order does not specify an effective date.  (Boulter Aff., Ex.).

However, "[t]he common rule in regard to legislation is that it shall take immediate effect unless otherwise provided, and this rule is applicable to ordinances." 5 McQuillin, The Law of Municipal Corporations § 15:36.  It is not uncommon for a statute to prescribe that certain types of ordinances not take effect until a certain time – for example, 10, 20 or 30 days – after its approval.  Id. Nevertheless, "invalidity as to the effective date of an ordinance . . . does not render the ordinance void."  Id.

The requirement of the passage of a certain period of time before an ordinance goes into effect "is intended to enable the public to acquire knowledge of the ordinance before it becomes operative for any purpose."  Id.  But, "the owners of property coming within the regulation of an ordinance are not entitled to

**Memorandum Decision and Order - 14**

other than the due and proper general public notice of the enactment of the ordinance." Id.

Here, the Lees have not presented any evidence that they, or their predecessors-in-interest, did not receive actual notice of the adoption of the ordinance, or that they were prejudiced in some fashion by the failure to give the statutorily-required thirty day grace period before the ordinance took effect. Under these circumstances, the failure to provide for an effective date in the ordinance, "does not render the ordinance void," id., but only invalidates the effective date of the ordinance so that the ordinance did not take effect for 30 days, rather than immediately upon enactment.

This approach, to deem the ordinance valid but the effective date invalid, is consistent with general principles applicable to the interpretation and enforcement of ordinances. The power of a court to declare an ordinance invalid should be exercised cautiously, and, in fact, courts are reluctant to do so. 6 McQuillin, The Law of Municipal Corporations § 20:4 Thus, a court should not strike down any ordinance where that ordinance can be reasonably upheld, and the ordinance will be upheld if the validity of the ordinance is fairly debatable. Id. When an ordinance can be interpreted in two ways, one of which sustains its validity and the other which defeats it, a court will adopt the sustaining interpretation, "even if that

**Memorandum Decision and Order - 15**

construction is not the most obvious or natural." 6 McQuillin, The Law of Municipal Corporations 20:56. Significantly, "[c]ourts are loathe to construe an ordinance as invalid, where the ordinance has been in operation and unchallenged for many years, and where under it valuable rights have accrued which would be destroyed if the ordinance were held to be invalid." Id.

With these guidelines in mind, this Court is unwilling, and, in fact, unable to invalidate the Mud Lake/Terreton herd district which has been unchallenged for almost eighty years. The failure by the Commission to specify an exact time at which the herd district took effect is not sufficient reason for this Court to invalidate the herd district. Under the above guidelines, the Court finds that it is reasonable to construe the ordinance to take effect thirty days after the order was issued in accordance with Idaho law in 1930.

In summary, the Court rejects the Lees' arguments that the Mud Lake/Terreton herd district is invalid. The inclusion of federal and state lands in the herd district did not invalidate the ordinance creating the district. In addition, the Lees have failed to establish that federal and state lands included in the district have been historically grazed by livestock. The Lees have also failed to carry their burden of overcoming the legal prima facie presumption of validity accorded an ordinance which has been on the books almost eighty years. They have failed to

**Memorandum Decision and Order - 16**

establish that the statutorily-required notice of the public hearings leading to enactment of the herd district ordinance was not published in a Jefferson County newspaper.  The Court has also concluded as a matter of law that the failure to include in the ordinance an effective date at least 30 days after enactment, as required by statute, does not invalidate the ordinance.  In turn, the Court finds, as a matter of law, that the subject area was a herd district.

### C.    Questions of fact remain.

As explained above, a cattle owner's liability is materially affected by whether the area is open range or a herd district.  In open range, there is absolute immunity.  In herd districts, as is the case here, there is immunity only if cattle are legally on the road.  *Moreland*, 152 P.3d at 561.  As the Court also pointed out in its earlier opinion, "[n]o person owning, or controlling the possession of, any domestic animal lawfully on any highway, shall be deemed guilty of negligence by reason thereof."  I.C. § 25-2119.  However, as the Idaho Supreme Court made clear in *Griffith,* we can presume that unattended domestic animals running at large on the highway does not fall within any reasonable definition of "lawfully."  *Griffith* 715 P.2d at 909.   Still, even if the accident occurs in a herd district, and lawful conditions are not present, the animal owner is not strictly liable.  Rather, the doctrine of *res ipsa loquitur* supplies an inference that the animal owner was

negligent, but that inference can be rebutted, and when properly placed at issue by the parties, the issues of lawful presence, inference of negligence, and rebuttal of the inference are questions for the trier of facts. *Griffith v. Schmidt*, 715 P.2d at 909.

That is the case here. The plaintiffs may find unpersuasive the Lees' explanation as to the care they provided their animals and the claim that they acted diligently to ensure that their fences were properly maintained. However, in resolving a summary judgment motion, "the evidence must be viewed in the light most favorable to the non-moving party, and the Court is not permitted to make credibility findings." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Moreover, direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). Thus, even though the Court has determined that the subject land is a herd district, the question of liability must be left to the jury. Accordingly, this case must proceed to trial.

**III.  Motion for Reconsideration Standard of Review**

A motion to reconsider an interlocutory ruling requires an analysis of two important principles: (1) error must be corrected; and (2) judicial efficiency demands forward progress. The former principle has led courts to hold that a denial of a motion to dismiss or for summary judgment may be reconsidered at any

time before final judgment. *Preaseau v. Prudential Insurance Co., 591 F.2d 74, 79-80 (9th Cir. 1979)*. While even an interlocutory decision becomes the "law of the case," it is not necessarily carved in stone. Justice Oliver Wendell Holmes concluded that the "law of the case" doctrine "merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power." *Messinger v. Anderson*, 225 U.S. 436, 444 (1912). "The only sensible thing for a trial court to do is to set itself right as soon as possible when convinced that the law of the case is erroneous. There is no need to await reversal." *In re Airport Car Rental Antitrust Litigation*, 521 F.Supp. 568, 572 (N.D.Cal. 1981)(Schwartzer, J.).

The need to be right, however, must be balanced with the need for forward progress. A court's opinions "are not intended as mere first drafts, subject to revision and reconsideration at a litigant's pleasure." *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D.Ill.1988). "Courts have distilled various grounds for reconsideration of prior rulings into three major grounds for justifying reconsideration: (1) an intervening change in controlling law; (2) the availability of new evidence or an expanded factual record; and (3) need to correct a clear error or to prevent manifest injustice." *Louen v Twedt*, 2007 WL 915226 (E.D.Cal. March 26, 2007). If the motion to reconsider does not fall within one of

**Memorandum Decision and Order - 19**

these three categories, it must be denied.

The Plaintiffs ask that the Court reconsider its decision that the Plaintiffs would not be permitted to introduce evidence of past incidents of cattle roaming off the Lees' property in Clark County.  The parties agree that the property in Clark County is open range.  The Court determined that evidence of incidents on the Clark County property was irrelevant because animals may roam freely in open range areas without risk of owner liability.  *Adamson*, 990 P.2d at 1217.

Plaintiffs now assert that notwithstanding the immunity provided by statutes and case law, the Lees are somehow liable based on duties owed to government agencies to maintain fences.  However, even if the Lees have some type of contractual or other duty toward government agencies, such a duty does not create liability toward Plaintiffs.  Thus, Plaintiffs' motion to reconsider will be denied.

## IV.    Motion to Exclude

Plaintiffs filed two motions to exclude.  At oral argument, Plaintiffs withdrew their second motion (Docket No. 85).  Accordingly, the Court will deem that motion to be moot.  The other motion seeks exclusion of the expert report and testimony of Bryan Finkle.

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert testimony, in conjunction with *Daubert v. Merrell Dow Pharmaceuticals,*

*Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999).  Plaintiffs contend that Dr. Finkle's testimony fails the *Daubert* test.

*Daubert* provides the following non-exclusive list of factors in determining the reliability of scientific evidence: "(1) whether a scientific theory or technique can be (and has been) tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error and the existence and maintenance of standards controlling the technique's operation; and (4) whether the technique is generally accepted."  Cooper v. Brown 510 F.3d 870, 942-43 (9th Cir. 2007) (citing *Daubert*, 509 U.S. at 593-94; *Kumho Tire*, 526 U.S. at 151).  However, this list of factors is meant to be helpful, not definitive.  *Id.* at 943.  "The goal is to make certain that an expert ... employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Id.* (Internal quotation and citation omitted).  The Court must ultimately employ an independent, flexible approach in order to determine whether Dr. Finkle's methodology is scientifically valid.  *Daubert*, 509 U.S. at 594-95.

Dr. Finkle is a forensic toxicologist.  The Lees retained Dr. Finkle to determine the level of intoxication of the driver of the automobile involved in the collision in this matter at the time of the accident.  Defendants provided Dr. Finkle

**Memorandum Decision and Order - 21**

with medical reports showing a blood-alcohol content of 0.049 approximately one hour and 38 minutes after the collision, as well as police reports and notes indicating that the driver had been drinking alcohol prior to the collision.  Based on this information, the time of the accident, and the general physical attributes of the driver, such as height, weight, and age, Dr. Finkle made a retrograde determination as to the driver's alcohol level at the time of the accident.

According to his Curriculum Vitae, Dr. Finkle has written several toxicology articles for peer-reviewed journals.  Additionally, although Dr. Finkle admits that there would be some variation in results if a clinical study analyzed the particular alcohol clearance of a group, he testified that the typical rate is .02 per hour, which does  not suggest the possibility of a significant potential error rate.

A review of Plaintiffs' concerns with Dr. Finkle's testimony and report reveals several statements likely taken out of context in an attempt to rebut the overall findings.  Based on these argument, the Court finds that Plaintiffs have not provided the Court with a sufficient basis to conclude that Dr. Finkle's methodology is so unreliable as to justify exclusion under Rule 702.  The Court may be open to a pre-trial *Daubert* hearing to flesh out the issue before trial if Plaintiffs request one.  At this point, however, the Court will deny the motion to exclude.

**Memorandum Decision and Order - 22**

The Court will note for the record, however, that the Court will not allow Dr. Finkle to testify about issues where he has no personal knowledge or expertise. Specifically, as discussed during oral argument, Dr. Finkle will not be allowed to give expert testimony about the speed of the vehicle.

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that Plaintiffs' Motion for Reconsideration (Docket No. 81) shall be, and the same is hereby, DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Renewed Motion for Partial Summary Judgment (Docket No. 83) shall be, and the same is hereby, GRANTED in part and DENIED in part. The motion is granted to the extent it seeks a finding that the subject land was a herd district. It is denied to the extent it seeks a finding of liability at this point. That issue will be addressed at trial.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Exclude Expert Report and Testimony of Bryan Finkle (Docket No. 84) shall be, and the same is hereby DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Objection to Additional Defense Expert Testimony (Docket No. 85) shall be, and the same is hereby, DEEMED MOOT.

IT IS FURTHER ORDERED that Plaintiffs' Motion to File Excess Pages

(Docket No. 86) shall be, and the same is hereby, GRANTED.

IT IS FURTHER ORDERED that and Plaintiffs' Second Motion to File

Excess Pages (Docket No. 104) shall be, and the same is hereby, GRANTED.

IT IS FURTHER ORDERED that the Clerk of the Court shall set this case

for a status conference for the purpose of setting a trial date.



DATED:  **October 8, 2008**

Honorable B. Lynn Winmill
Chief U. S. District Judge

**Memorandum Decision and Order - 24**